United States District Court
District of Connecticut

```
-------------------------------------------------x
JOHN HOLLIS,                                     :
                                                 :
                Plaintiff,                       :
                                                 :   Civil No. 3:14CV00516 (AWT)
v.                                               :
                                                 :
DEPARTMENT OF MENTAL HEALTH                      :
AND ADDICTIVE SERVICES FOR                       :
THE STATE OF CONNECTICUT and                     :
CATHY MCGUINESS and LINDA                        :
GAGNON, in their individual capacities,          :
                                                 :
                Defendants.                      :
                                                 :
-------------------------------------------------x
```

## RULING ON MOTION TO DISMISS

Plaintiff John Hollis ("Hollis") brings a four count Amended Complaint against defendants Department of Mental Health and Addiction Services for the State of Connecticut ("DMHAS") and Cathy McGuiness and Linda Gagnon in their individual capacities. The First Count is a claim pursuant to 42 U.S.C. § 2000e et seq. ("Title VII") against DMHAS for gender discrimination. The Second Count is a claim pursuant to 42 U.S.C. § 1983 against Cathy McGuiness and Linda Gagnon for discriminating against the plaintiff because of his gender in violation of the Equal Protection Clause. The Third Count is a Title VII retaliation claim against DHMAS. The Fourth Count is a claim for intentional infliction of emotional distress against Cathy McGuiness and Linda Gagnon. The defendants have moved to dismiss the First Count, the Third Count and the Fourth Count as to Linda Gagnon. For the reasons set forth below, the defendants' motion is being granted in part and denied in part. The motion is being granted

except with respect to a portion of the Third Count, i.e., the claim that the defendants retaliated against the plaintiff by denial of overtime pay at the end of 2009.

I.  FACTUAL ALLEGATIONS

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997). Hollis, who is male, has been employed as a Medical Records Specialist I by defendant DMHAS in its Health Information Management Department since 1997. Defendant Cathy McGuiness ("McGuiness") is currently Hollis's supervisor and was at all relevant times. In 2003 and 2005, Hollis filed complaints with the Connecticut Commission on Human Rights and Opportunities (the "CHRO"). Both complaints were resolved by means of mandatory mediation sessions at the CHRO.

In 2009, McGuiness wrote up Hollis for "workplace misconduct". An internal investigation was conducted, which exonerated Hollis. In 2009, McGuiness removed the partitions supporting Hollis's workspace cubicle and called the Connecticut Valley Hospital ("CVH") police, claiming that Hollis had barricaded himself in his cubicle. After investigating, the CVH police determined that McGuiness's claims were unfounded.

McGuiness's harassment of Hollis continued over the next two years. In 2009, Hollis was required to work overtime for which he was never compensated. In 2011, McGuiness threatened to call the police on Hollis, causing him distress so severe he was required to be hospitalized. Also in 2011, Hollis was publicly berated by McGuiness and was required to perform an unreasonable number of tasks that were not covered by his job description. McGuiness berated Hollis in 2012 based on a leave request slip submitted by Hollis so he could attend to union business, and McGuiness did not sign the leave slip for several days. Also, when Hollis was in

McGuiness's office in 2012 he noticed a document on McGuiness's printer which purported to thoroughly document Hollis's daily activities. This document was largely falsified, and other employees were not subjected to such close scrutiny by McGuiness.

In 2012, defendant Linda Gagnon ("Gagnon") ordered a witness to sit in on and observe Hollis's performance appraisal. A witness was not required to be present for any other employee's review.

Hollis has applied for numerous promotional opportunities and all of his applications have been denied. The promotional opportunities were awarded to female employees who were less qualified than Hollis.

On or about November 18, 2009, Hollis filed a complaint with the CHRO, as well as the Equal Employment Opportunities Commission (the "EEOC"). That complaint states that the plaintiff was being harassed, was being retaliated against and was being subjected to a hostile work environment. It states that the motivation for those actions was the plaintiff's gender and the fact that the plaintiff had previously opposed a discriminatory practice. The plaintiff did not check the part of the form where he would have indicated that he had been discriminated against in terms and conditions of employment. Hollis filed an amendment to that complaint in 2011. In that amendment, Hollis described in detail an incident that occurred on October 19, 2011. He described the incident as being in direct retaliation for his engaging in protected activity. He also referred to it as further evidence of continuing harassment, hostile work environment and retaliation. Hollis filed a second amendment to that complaint on November 8, 2012. That second amendment stated that it was adding certain particulars. Hollis described the events surrounding his August 28, 2012 request for leave to attend union business. He also described the presence of a witness during his performance appraisal on September 28, 2012. In addition,

he described finding the document on McGuiness's printer on October 11, 2012. He stated that these incidents are further evidence of continuing harassment, hostile work environment and retaliation.

## II.    LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted)(citing Papasan v. Allain, 478 U.S. 265, 286 (1986) and noting that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'").  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted).

However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Stores Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999)(quoting Ryder v. Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779

(2d Cir. 1984)). "The issue" on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

### III. DISCUSSION

#### A. First Count (Title VII – Gender Discrimination)

The Amended Complaint alleges a claim for gender discrimination in the form of discriminatory and disparate treatment with respect to terms and conditions of employment and in the form of harassment. The claim for discriminatory and disparate treatment with respect to terms and conditions of employment was not made in the plaintiff's CHRO Complaint, as amended (the "CHRO Complaint"), nor is it reasonably related to the claims that were made in the CHRO Complaint. The claim for gender discrimination in the form of harassment was made in the CHRO Complaint, but the only two actions alleged that would constitute adverse employment actions were not included in the CHRO Complaint and are not reasonably related to the claims that were actually made.

##### 1. Exhaustion of Administrative Remedies

"Under Title VII . . . a plaintiff can sue in federal court only after filing timely charges with the EEOC." McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006) (citations omitted); see also Pleau v. Centrix, Inc., 501 F. Supp. 2d 321, 325 (D. Conn. 2007) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359–60 (2d Cir. 2001)) ("Title VII requires that an

5

employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures."). "A district court may hear only claims that are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to those alleged in the EEOC charge." Pleau, 501 F. Supp. 2d at 325 (citing Butts v. City of New York Dep't of Hous., 990 F.2d 1397, 1401 (2d Cir. 1993) superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 693 (2d Cir. 1998)). See Sawka v. ADP, Inc., No. 3:13CV754 (AWT), 2014 WL 3845238, at *3 (D. Conn. Aug. 5, 2014) ("'In this inquiry, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving,' and '[t]he central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases.'") (quoting Farren v. Shaw Envtl., Inc., 510 Fed. App'x 44, 46 (2d Cir. 2013)).

The plaintiff's CHRO Complaint alleged that he suffered harassment, retaliation and a hostile work environment. The plaintiff also alleged that he believed the reason for these actions was his sex, which he identified as male. However, the plaintiff did not indicate that he was discriminated against with respect to the terms and conditions of his employment, nor did he indicate that he was not promoted or hired due to discrimination. To the contrary, although there was a space provided specifically for him to indicate if he had been "discriminated against in the terms and conditions of his employment" or if he had been denied promotional opportunities, he did not mark these items; rather he left them blank. (See Defs' Mem. in Supp. of Mot. to Dismiss Am. Compl., Ex. 2 ("Doc. No. 33-2"), p.1.)

In paragraph 8 of the CHRO Complaint, which was part of the November 18, 2009 filing, the plaintiff stated: "The harassment by McGuiness was premised upon my sex (Male), and

retaliation for my filing the previous same two Complaints." (Doc. No. 33-2, p.3.) Paragraph 10, which is part of the same filing, states:

> I charge the State of Connecticut, Department of Mental [H]ealth and Addiction Services and Connecticut Valley Hospital with unlawful discrimination through their agent and employee, Cathy McGuiness, who has continuously harassed and retaliated against me because of my sex (Male), and for filing the previous same two Compaints.

(Doc. No. 33-2, pp. 3-4.) In addition, paragraph 18, which is part of the November 9, 2011 filing, refers to "the harassment, retaliation and hostile work environment perpetrated by Respondent, its agents and/or employees." (Doc. No. 33-2, p.6.) Finally, paragraph 26, which is part of the November 8, 2012, filing refers to actions being "directly connected to the harassment, retaliation, and hostile work environment perpetrated by the Respondent through its agents and/or employees." (Doc. No. 33-2, p.14.)

Thus the plaintiff's CHRO Complaint is clearly limited to a claim of harassment, resulting in a hostile work environment and based on the plaintiff being male, and a claim of retaliation for his previous filing of complaints with the CHRO. The denial of overtime pay and several promotions are specific, distinct and particular incidents that are unrelated to any of the specific allegations in the plaintiff's CHRO Complaint. These are factually dissimilar claims that would require "an investigation of events differing in time and nature" from the allegations set forth in the plaintiff's CHRO Complaint. See Wiley v. Citibank, N.A., No. 98 CIV. 1139 (DAB), 2000 WL 122148, at *4 (S.D.N.Y. Feb. 1, 2000).

Thus, the plaintiff did not allege facts sufficient to put the CHRO on notice that he was alleging discrimination based on his gender in the terms and conditions of his employment or in promotional opportunities. See Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) ("The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'") (citations omitted).

7

As the plaintiff failed to exhaust his administrative remedies, his gender discrimination claims that he was denied overtime pay and promotional opportunities are time barred. See Pleau, 501 F. Supp. 2d at 325 ("A district court may hear only claims that are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to those alleged in the EEOC charge.") (citations omitted).

### 2. Adverse Employment Action

"Under the McDonnell Douglas framework, a plaintiff establishes a prima facie case of intentional discrimination by showing that '(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination.'" Reynolds v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012) (quoting Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491–92 (2d Cir. 2010)). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to show a legitimate nondiscriminatory reason for the adverse employment action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Reynolds, 685 F.3d at 202. The burden shifts back to the plaintiff if the defendant can show a legitimate nondiscriminatory reason for the adverse employment action, and "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reynolds, 685 F.3d at 202 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Gabalya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). For an action to be materially adverse "a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id.

8

(quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). "Examples of materially adverse employment changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices . . . unique to a particular situation.'" Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (quoting Gabalya, 202 F.3d at 640).

 Excluding claims that are time barred, the plaintiff has failed to allege any change in working conditions that rises to the level of a materially adverse change. The plaintiff alleges that he was written up, his cubicle partitions were removed, defendants threatened to call the police and then called the police based on the fact that the plaintiff was barricading himself in his cubicle, he was publicly berated, he was assigned an unreasonable amount of tasks that he was not responsible for, a signature on a leave slip was delayed, a witness was present at his performance appraisal, and he was subjected to hyper-scrutiny by a supervisor. However, reprimands and excessive scrutiny do not constitute "adverse employment actions." See Plahutnik v. Daikin Am., Inc., 912 F. Supp. 2d 96, 103 (S.D.N.Y. 2012) ("Increased or excessive scrutiny cannot, without more, support a Title VII discrimination claim.") (citing Lucenti v. Potter, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("Reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions.")). Also, conduct "which could be found to be offensive, discourteous, demeaning and/or belittling" does not constitute an "adverse employment action." Sangan v. Yale Univ., No. 3:06CV00587 (PCD), 2008 WL 350626, at *4 (D. Conn. Feb. 7, 2008). In addition, being yelled at, public criticism, routine ridicule and unfavorable work assignments do not constitute "adverse employment actions." See Borrero v. Am. Exp. Bank Ltd., 533 F. Supp. 2d 429, 437-38 (S.D.N.Y. 2008); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d

364, 371 (S.D.N.Y. 2005). Moreover, "[a]dditional duties do not constitute 'adverse employment actions,' . . . unless they are so weighty as effectively to change [the] basic terms of employment. . . . '[O]ther circuits have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes.'" Thorn v. Sebelius, 766 F. Supp. 2d 585, 599 (D. Md. 2011), aff'd, 465 F. App'x 274 (4th Cir. 2012) (citations omitted).

Thus, as to the claims that are not barred due to failure to exhaust administrative remedies, the plaintiff has failed to allege facts that could show that he suffered an "adverse employment action."

### B.  Third Count (Title VII -- Retaliation)

Title VII protects employees from discriminatory actions by their employers because an employee has engaged in protected activity.

> [E]mployees potentially aggrieved under Title VII are protected from interference in two principal . . . ways. First, in the anti-retaliation provision, Congress explicitly forbade discrimination against an employee (1) who has opposed any practice made an unlawful employment practice by [Title VII] or (2) who has made a charge, testified, [or] assisted…in any manner in an investigation, proceeding, or hearing under [Title VII]  . . . .

Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 120–21 (2d Cir. 2008) (citations omitted) (internal quotation marks omitted). "[T]he intermediate steps that a plaintiff actively pursues in support of a discrimination complaint—not just the filing of such charges themselves—are activities protected from retaliation." Gomez v. Metro. Dist., 10 F. Supp. 3d 224, 237 (D. Conn. 2014) . "The burden-shifting framework laid out in *McDonnell Douglas* governs retaliation claims." Id. at 235 (citing Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013)). To establish a prima facie case of retaliation the plaintiff must show "(1) the employee was engaged in a protected activity; (2) the employer was aware of that activity; (3)

10

the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (citing Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)).

The plaintiff here relies on temporal proximity to establish a causal connection. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (emphasis added) (citations omitted). In Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010), the court stated that while "this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship." Id. at 110 (citations omitted). See also Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) ("The three-week period from [plaintiff's] complaint to her termination is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity."); Reed, 95 F.3d at 1178 (stating that the causal connection "was shown in this case by, among other things, evidence that the time between the plaintiff's initial complaint and her discharge was a mere twelve days."). Also, in Meyers v. Medco Health Solutions Inc., No. 09 Civ. 09216 (RKE), 2012 WL 4747173, at *9 (S.D.N.Y. Oct. 4, 2012) the court stated, with respect to a time span of a year, that "[w]hether this gap in time evinces that the termination was not in response to [plaintiff's] protected activity, or the need to keep her engaged in [a pending lawsuit], is a question for a jury." However, there, the plaintiff's involvement in a pending lawsuit led the court to conclude that the defendants may

11

have kept the plaintiff employed during this extended period of time to ensure her cooperation in the lawsuit.

The plaintiff's second amendment to the CHRO Complaint was filed on November 8, 2012. The earliest instance of the plaintiff allegedly being denied a promotional opportunity occurred on July 30, 2013, when the plaintiff applied for a position at Haviland Hall and received no response. So approximately nine months passed after the filing of the plaintiff's second amendment to his CHRO Complaint before this alleged retaliatory denial of a promotional opportunity. Thus the two events cannot be considered "very close" temporally, and there are no special circumstances alleged that would suggest that, as in Meyers, a jury could find that a longer period of time satisfies the requirement that there be a causal connection.

The plaintiff also alleges that he was denied overtime pay in 2009 after he filed the initial CHRO Complaint, and "since October 20, 2012," when the plaintiff filed the second amendment to the CHRO Complaint. (Am. Compl. ¶28.) As discussed above, to establish causation indirectly through relying solely on temporal proximity, the protected activity and the retaliatory action must have occurred very close in time.[1] With respect to the plaintiff's claim that he was denied overtime in 2009 after he filed the initial CHRO Complaint, that complaint was filed on November 18, 2009. At that point there were approximately six weeks left in the calendar year. Thus the plaintiff has, in substance, alleged that he was subjected to retaliation within six weeks of filing the CHRO Complaint. These two events can be considered "very close" temporally, so the plaintiff has set forth sufficient factual allegations to state a claim for retaliation with respect

---

[1] To the extent the defendants argue that this claim is barred for failure to exhaust administrative remedies, that argument is unavailing. See Butts, 990 F.2d at 1402 ("We have recognized . . . situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action. . . . [One] type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge.") (citation omitted).

to denial of overtime pay at the end of 2009. Therefore, the motion to dismiss is being denied with respect to this part of the plaintiff's retaliation claim.

With respect to the plaintiff's allegation that he has been denied overtime pay since October 2012, while the plaintiff has alleged retaliatory actions over a span of multiple years, the factual allegations are too vague. They are not specific enough to enable the court to determine whether the alleged retaliatory action (or actions) occurred within a period of time sufficient to establish causation solely through temporal proximity. Therefore, the court concludes that the plaintiff has not alleged a causal connection between protected activity and denial of overtime pay since October 20, 2012.

The plaintiff also alleges that since May 2014 the defendants have retaliated against him in that he has been completely isolated from his co-workers and also has been working out of his job classification. However, these factual allegations cannot constitute the basis for a retaliation claim. First, they do not show that the plaintiff was subjected to an "adverse employment action," and second they do not suffice to establish, based on temporal proximity alone, that there was a causal connection between protected activity and an "adverse employment action."

**C.  Fourth Count  (Intentional Infliction of Emotional Distress)**

The Fourth Count is a claim for intentional infliction of emotional distress against the individual defendants. The defendants move to dismiss this claim as to defendant Gagnon only.

To prevail on a claim for intentional infliction of emotional distress, the plaintiff must show "(1) the defendant intended or knew that emotional distress would likely result from its conduct; (2) the defendant's conduct was outrageous and extreme; (3) the defendant's conduct caused plaintiff distress; and (4) plaintiff's distress was severe." Menon v. Frinton, 170 F. Supp. 2d 190, 198 (D. Conn. 2001) (citing Petyan v. Ellis, 200 Conn. 243, 253 (1986)).

The "disputed conduct must exceed all bounds tolerated by a decent society, and cannot be merely rude, tactless or insulting." Menon, 170 F. Supp. 2d at 198. See Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003) ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" (citations omitted)). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." Presley v. Pepperidge Farm Inc., 356 F. Supp. 2d 109, 137 (D. Conn. 2005) (citations omitted) (quoting Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000)). "There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action as the court must look to the specific facts and circumstances of each case in making its decisions." Menon, 170 F. Supp. 2d at 198 (citations omitted).

However, "[i]n addition to routine employment actions, Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (citing Taylor v. Maxxim Med., Inc., No. 3:99CV338AHN, 2000 WL 630918, at *3 (D. Conn. 2000)). See also Cowras v. Hard Copy, 56 F. Supp. 2d 207, 210 (D. Conn. 1999) ("If a defendant's conduct is merely insulting, displays bad taste, or results in hurt feelings or embarrassment, the [intentional infliction of emotional distress] claim is generally dismissed as a matter of law."); Williams v. Deloitte Servs. L.P., No. CIV.A. 3:09-CV-17(JCH), 2009 WL 3571365, at *3 (D. Conn. Oct. 26, 2009) (noting that "routine employment action, even if made with improper motivations, does not constitute extreme and outrageous behavior" and, therefore, "claims of unfair discipline,

negative performance reviews, and failures of promotion", which "fall within this category, . . . do not make out a claim for intentional infliction of emotional distress") (internal citations omitted). Employees "reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace." Mercer v. Brunt, 272 F. Supp 2d. 181, 188 (D. Conn. 2002) (quoting Perodeau v. City of Hartford, 259 Conn. 729, 743 (2002)).

The plaintiff bases his claim for intentional infliction of emotional distress on "not being paid for overtime for which he was ordered to work; repeatedly denied promotions which went to less qualified similarly situated female co-workers; deliberate isolation from his co-workers; [and] his being forced to do work well outside of his position's classifications . . . ." (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, p.13. (Doc. No. 34, p.15)) In addition, the plaintiff alleges that Gagnon ordered a witness to be present at the plaintiff's performance evaluation. The alleged conduct attributed to defendant Gagnon falls squarely within the description of conduct that has been found not to constitute extreme and outrageous conduct. Therefore, the Fourth Count should be dismissed as to defendant Gagnon.

### IV.     Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 33) is hereby GRANTED in part and DENIED in part. The motion to dismiss is being granted as to the First Count, the claims of the Third Count except the claim for retaliation in the form of denial of overtime pay at the end of 2009, and the Fourth Count; it is being denied with respect to the claim for retaliation in the form of denial of overtime pay at the end of 2009.

It is so ordered.

Signed this 11th day of September 2015 at Hartford, Connecticut.

                                                                                                   _/s/AWT_____

                                                                         Alvin W. Thompson
                                                           United States District Judge

Case 3:14-cv-00516-AWT   Document 39   Filed 09/11/15   Page 16 of 16